IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF WISCONSIN
---

GLENN T. TURNER,

                    Plaintiff,                    FINAL PRETRIAL
   v.                                                   CONFERENCE ORDER

LEBBEUS BROWN, HEIDI BLOYER,               17-cv-764-jdp
JULIE BULMANN, and ZACHARY BERGER,

                    Defendants.

---

The court held a final pretrial conference by phone on September 26, 2019, at which plaintiff Glenn T. Turner appeared pro se and defendants appeared by counsel, Eliot Held and Brandon Flugaur. This order summarizes the rulings made at the conference, and it provides further rulings about the parties' exhibits.

**A. Witnesses**

In a previous order, I directed the clerk of court to issue writs of habeas corpus ad testificandum for Turner's inmate witnesses Byron Stewart, Dion Matthews, Tingia Wheeler, and Mical Thomas. The next day, defendants' counsel filed a motion requesting that Matthews, Wheeler, and Thomas be permitted to appear by video conference on the ground that it would be a significant burden for DOC to transport four inmates and Turner to Madison for trial. Dkt. #106. For the reasons stated at the conference, I will grant defendants' motion and will direct the clerk of court to cancel the writs for Matthews, Wheeler, and Thomas. Counsel must ensure that the video conferencing at the relevant institutions meets the court's standards, including that (1) counsel identify a person at the prison responsible for arranging video conferencing who will be available to coordinate with the court in advance of trial and who will be available to address any problems that arise during the trial; (2) the inmate must be

positioned properly in front of the camera, so that his face fills most of the screen; (3) the microphone is positioned near the witness, so that the audio is clear and free of interference; and (4) the inmate will be ready and available at the appropriate time.

The writ for Stewart will remain in place.

## B. Exhibits

### 1. Defendants' objections to Turner's exhibits

Defendants objected to several of Turner's proposed exhibits. I will rule on those objections as follows:

**Exhibits 1, 6, 7, 8, 9, and 10:** These documents relate to Turner's grievances and litigation regarding administrative confinement review hearings that were held in 2014 and 2015 that Turner believed violated DOC regulations. Defendants contend that the documents are not relevant to Turner's claims in this case. But according to Turner, his efforts to challenge the administrative confinement review hearings caused defendants to retaliate against him in various ways, including by confiscating his inhaler and impeding his progress through the High Risk Offender Program (HROP). Therefore, I will not exclude these exhibits. Turner should make sure at trial to put in evidence showing that (1) defendants knew about his grievances and litigation concerning the administrative confinement review hearings, and (2) defendants were motivated by the grievances and litigation to take retaliatory actions against Turner. In addition, I caution Turner against spending a significant amount of time at trial discussing the administrative confinement review process or why he thought his 2014 and 2015 hearings were procedurally deficient. Such facts are irrelevant and would confuse the jury. Turner should instead use these documents to show that he filed complaints and engaged in litigation against prison officials.

**Exhibit 2**: This document is a June 2015 decision by Warden Boughton and the DAI Administrator to retain Turner in administrative confinement. Turner does not have a claim in this case challenging his continued placement on administrative confinement generally. His retaliation claims relate only to his stalled progression through HROP and the confiscation of his inhaler. In addition, Boughton has been dismissed as a defendant and the DAI administrator is not a defendant. Therefore, I will exclude this exhibit as irrelevant.

**Exhibit 11**: These are some of Turner's writings regarding his experience in solitary confinement. Defendants argue that the writings are irrelevant. But because Turner says that defendants were motivated to retaliate against him because of these writings, I will not exclude them.

**Exhibit 14**: This is defendants' supplemental response to Turner's first set of discovery. The response itself, which was drafted by defendants' counsel, will be excluded as hearsay that does not fall within an exception. Turner may introduce the email from defendant Lebbeus Brown, Dkt. 86-15 at 4, because that email is admissible as a statement from a party opponent. Fed. R. Evid. 801(d)(2)(A).

**Exhibit 17**: This is Turner's inmate complaint and the institution's response concerning the confiscation of the inhaler from his cell. Defendants argue that the inmate complaint is hearsay. This is correct, but only if Turner is intending to use the inmate complaint to establish that that what he says in the complaint is true. In other words, Turner cannot use the complaint as evidence that his inhaler was confiscated or that the health services unit had no record of an inhaler being returned. But Turner may use the inmate complaint as a prior consistent statement to rebut any suggestion that he fabricated the story about his inhaler being confiscated, that he sought help in finding his missing inhaler, or that his testimony is otherwise

incredible. Fed. R. Civ. P. 801(d)(1)(B). He may also introduce the inmate complaint to provide context for the inmate complaint examiner's response to his complaint. *See United States v. Breland*, 356 F.3d 787, 792 (7th Cir. 2004) (explaining that out-of-court statements are admissible "when offered as background information to put [an action] in context because they are not being offered for the truth of the matter asserted"). The inmate complaint examiner's response is admissible under the exception to hearsay rules as a record of a regularly conducted activity. Fed. R. Civ. P. 803(6).

**Exhibits 21 and 41:** These documents provide information about asthma and bronchospasms. For the reasons explained at the telephonic final pretrial conference, these documents will be excluded as improper expert testimony. Turner may testify from his own personal experience and knowledge about his asthma condition and symptoms.

**Exhibits 25, 26, and 29:** Exhibits 25 and 26 are former defendant Williams Brown's responses to requests for admissions and interrogatory responses. Exhibit 29 is former defendant Lacy Dickman's responses to Turner's request for admissions. Defendants argue that these are not admissible as statements by a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence because Turner's claims against Brown and Dickman were dismissed at summary judgment. Defendants are correct that because Brown and Dickman are no longer parties, their discovery responses are not party admissions under Rule 801(d)(2)(A). *See United States v. Smith*, 746 F.2d 1183, 1185 (6th Cir. 1984) ("[O]nce [declarant] was severed from the case, he was no longer a party and the statement was no longer admissible under 801(d)(2)(A)."); *Fitzpatrick v. City of Fort Wayne*, 259 F.R.D. 357, 366–67 (N.D. Ind. 2009) (holding that former party's statement was not admissible against remaining party).

4

But I conclude that Brown's and Dickman's discovery responses are admissible under the residual exception to hearsay statements, set forth in Rule 807 of the Federal Rules of Evidence. Under the residual exception, a hearsay statement is not excluded by the rule against hearsay if (1) the statement "has equivalent guarantees of trustworthiness," (2) is offered as evidence of a material fact, (3) is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts, (4) admitting it will serve the purpose of the hearsay rules and the interests of justice, and (5) the proponent has given notice to the adverse party that he intends to use the statement. Fed. R. Civ. P. 807. Brown's and Dickman's statements meet all of these factors.

First, there is no question that the statements are trustworthy, as they are sworn statements submitted by Brown and Dickman themselves. Second, Brown's statements would be offered as evidence that the person responsible for investigating the confiscation of the inhaler from Turner's cell was not able to confirm that the inhaler had another inmate's name on it. Dickman's statements would be offered as evidence that she voted to demote Turner in HROP for having another inmate's inhaler, despite failing to investigate whether the inhaler was Turner's or someone else's. These are material facts. Dickman's statement that she did not know Lebbeus Brown wanted Turner out of HROP may also be relevant to a material fact in dispute at trial.

Third, Turner cannot offer the statements from Brown or Dickman through any other reasonable efforts. In general, if a party could simply subpoena a witness who made the hearsay statement, the party could not rely on the residual exception to introduce the hearsay statement at trial. *See Parsons v. Honeywell*, 929 F.2d 901, 907–08 (2d Cir. 1991) (explaining that residual hearsay exception did not apply because declarant's in-person testimony would be more

5

probative than the hearsay statement); *United States v. Zapata*, 356 F.Supp.2d 323, 328 (S.D.N.Y. 2005) (same). But here, Turner's prison account statement shows that he does not have the funds to subpoena witnesses for trial. Dkt. 7. Therefore, the discovery responses are the only way for Turner to introduce statements from Brown and Dickman.

Fourth, admitting the statements will serve the purposes of the rules and the interests of justice. The purpose of Rule 807 is to make sure that reliable, material hearsay evidence is admitted, regardless of whether it fits neatly into one of the exceptions enumerated in the Rules of Evidence. *United States v. Moore*, 824 F.3d 620, 624 (7th Cir. 2016). That purpose is served by admitting the Brown's and Dickman's discovery responses. They are reliable, material, and do not pose any prejudice to defendants.

Fifth, Turner has provided ample notice to defendants that he intends to use these discovery responses at trial. Accordingly, I will not preclude them.

**Exhibits 30 through 37:** These are discovery responses by defendants Bulmann, Bloyer, Berger, and Lebbeus Brown. Defendants concede that they are admissible as statements by a party opponent under Rule 801(d)(2)(A), but they argue that they may be admitted only against the party who made the statement. Defendants argue that the court should issue a limiting instructing to jury explaining how these statements may be used. I will overrule this objection without prejudice. Without knowing which statements Turner will use and how, it is premature to consider whether a limiting instruction is appropriate or necessary. If defendants think that a limiting instruction is necessary after the evidence has been admitted, they may request one at the appropriate time.

**Exhibit 38:** This is defendants' response to Turner's first set of discovery requests. Defendants object that the response is irrelevant, but as I stated at the telephonic conference,

Turner may introduce defendants' response to Turner's request 2 regarding whether there were any other inmates named "Turner" housed at WSPF during the relevant time period.

2.  **Turner's objections to defendants' exhibits**

In a previous order, I denied Turner's motion in limine in which he sought to preclude defendants from introducing evidence or argument that Turner is involved in a gang or "security threat group" or that defendants relied on Turner's alleged gang activity to demote or remove him from HROP. Dkt. 103. At the final pretrial conference, Turner asked me to reconsider this decision, arguing that it would be unfair and highly prejudicial to permit defendants to testify at trial that they demoted Turner in HROP because of Turner's alleged gang activity.

Turner makes some persuasive arguments. His removal from HROP in September 2016 is not part of his claim in this case. Instead, Turner's claim concerns defendant Brown's removing Turner from the Thinking for Change program and demoting Turner in HROP, both of which occurred before September 2016. Defendants did not cite "gang activity" as a basis for removing Turner from Thinking for Change or demoting him in their DOC-30B reviews of his HROP progress, in their discovery responses, or at summary judgment.

On the other hand, Turner has not identified any prior sworn statement by defendants denying that Turner's alleged gang involvement influenced the decision to demote him in HROP or remove him from the Thinking for Change program. It does not appear that Turner asked defendants directly whether his alleged gang affiliation played a role in his demotion in HROP. In addition, I reviewed defendants' discovery responses and, although defendants identify Turner's behavioral issues as one of the reasons for his demotions, defendants never state that Turner's behavior was the *only* reason for his demotion. Therefore, I conclude that

defendants can present testimony and evidence that Turner's alleged gang involvement was one of the reasons that they demoted him in HROP. Turner will be free to impeach defendants with sworn statements that they made at summary judgment that contradict testimony they give at trial.

This leaves the question whether defendants may introduce into evidence the major conduct report no. 2821780, that Turner received on September 9, 2016. The conduct report charges Turner with violating various DOC regulations by engaging in gang-related communications and activities. Dkt. 38-2. I have several concerns about the conduct report. The conduct report appears to have only limited relevance. It was issued after Turner was demoted in HROP, so the conduct report itself was not the cause of his demotion. In addition, the conduct report contains numerous hearsay statements. The statements were drawn purportedly from letters found in Turner's cell, but defendants have not identified the letters as exhibits. Finally, the parties would have to spend a significant amount of time at trial explaining what the conduct report means and whether it was legitimate. The conduct report accuses Turner of sending coded messages about gang-related activities to several people, but Turner denies that he was sending coded messages and contends that the conduct report was retaliatory. From my own review, the alleged coded statements are not obviously nefarious. So defendants would have to spend time at trial explaining why they thought Turner's communications were gang-related and justifying the conduct report, and Turner would have to be given the opportunity to rebut defendants' testimony about his communications. Because of these concerns, I will exclude the conduct report. Defendants may explain at trial through testimony why they thought Turner was engaged in gang-related activity, but they may not present the conduct report itself.

ORDER

IT IS ORDERED that:

1. Defendants' motion to permit inmate witnesses Dion Matthews, Tingia Wheeler, and Mical Thomas to appear by video conference, Dkt. 106, is GRANTED as set forth above.

2. The clerk of court is directed to CANCEL the writs of habeas corpus ad testificandum for inmates Matthews, Wheeler, and Thomas.

3. The parties' objections to exhibits are resolved as set forth above.

4. The parties are to notify each other by October 3, 2019, the exhibits that they intend to use in their opening statements.

Entered October 4, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge