IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLENN T. TURNER,

                Plaintiff,

v.

LEBBEUS BROWN, HEIDI BLOYER,
JULIE BULMANN, and ZACHARY BERGER,

                Defendants.

OPINION and ORDER

17-cv-764-jdp

---

Plaintiff Glenn Turner alleged that security staff at Wisconsin Secure Program Facility confiscated his inhaler and kept him in segregation because staff were upset and annoyed by Turner's advocacy for better prison conditions. A three-day jury trial was held from October 15 to 17, 2019, at which Turner represented himself. On October 17, a jury returned a verdict in favor of defendants. Dkt. 121. The jury concluded that none of the defendants violated Turner's constitutional rights.

Before the court is Turner's motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure. Dkt. 127. Turner contends that the court erred by (1) permitting defendants to introduce evidence and argument regarding his and his witnesses' alleged affiliation with Gangster Disciples and other gangs; (2) permitting defendants to introduce evidence of Turner's and his witnesses' prior offenses; and (3) permitting defendants to introduce evidence that another inmate's name was on the inhaler confiscated from Turner's cell. Turner also contends that the verdict is against the weight of the evidence. As explained below, Turner has not shown that a new trial is warranted. Therefore, I will deny Turner's motion for a new trial.

ANALYSIS

To prevail on his Rule 59 motion for a new trial, Turner must show that the jury's verdict was against the manifest weight of the evidence or that the trial was unfair to him. *See Lewis v. McLean*, 941 F.3d 886, 891 (7th Cir. 2019); *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018).

**A. Evidence and argument regarding gang affiliation**

Turner contends that defendants' evidence and argument about Turner's and his witnesses' alleged gang affiliation and activities made the trial unfair because the evidence was highly prejudicial, was irrelevant, and was based primarily on unsupported accusations by a single witness. In evaluating Turner's arguments, I have reviewed an unofficial copy of the trial transcript and considered the nature and extent of the evidence and testimony regarding Turner's and his witnesses' alleged gang affiliation and activities.

At trial, both sides discussed Turner's and his witnesses' alleged gang affiliations and activities. During his own testimony, Turner stated that defendant Lebbeus Brown had accused him falsely of engaging in gang activity. Turner also described how Brown had contacted Turner's friend and supporter in Colorado and accused the friend of helping Turner communicate with gang members in the prison system. Some of Turner's inmate witnesses also testified during their direct examinations that they had been accused of participating in gang activity.

Turner called four inmate witnesses: Byron Stewart, Dion Matthews, Tingia Wheeler, and Mical Thomas. On direct examination, Matthews testified that defendant Brown had interpreted his collaboration with Turner as gang activity, even though Matthews and Turner were litigating about prison conditions on behalf of themselves and other prisoners, not on

2

behalf of any gang. Matthews testified that he had been accused falsely of acting on behalf of Gangster Disciples. Another of Turner's witnesses, Mical Thomas, testified that Brown had threatened him with a conduct report for engaging in gang activity with Turner.

On cross-examination, Turner and his witnesses all denied being current members of Gangster Disciples. Turner denied being a current or former gang member, denied engaging in gang activity, and denied communicating with Gangster Disciples members in the prison system. Inmates Matthews and Thomas also denied being current or former members of Gangster Disciples. Stewart testified that he was former member of Gangster Disciples, and Wheeler testified that he was a retired member of Growth and Development, which is an organization that has been linked to Gangster Disciples.

Defendants spent a significant amount of time discussing gang affiliations and activities during their case. Defendants introduced copies of security threat group affiliation forms for Turner, Wheeler, Mathews, Stewart, and Thomas. (The DOC uses the security threat group affiliation forms to record inmate affiliations with gang or other security threat groups.) The forms introduced at trial stated that Turner, Wheeler, Matthews, and Thomas are confirmed members of Gangster Disciples, that Stewart is a confirmed member of Black Gangster Disciples, and that Thomas is also a suspected member of Vice Lords. The inmates' affiliations were based on self-admission, outside correspondence, body tattoos and symbols, and conduct or incident reports written by staff.

Defendant Brown testified that he was the former gang coordinator at Wisconsin Secure Program Facility, and that based on that position, he was aware that Turner was one of the top leaders of Gangster Disciples in Wisconsin, that Turner outranked all of his inmate witnesses, and that Turner was in a position to "sanction" other gang members who did not do as he

3

ordered them, including by using physical force. Brown testified that Turner was engaged in gang activities with high-level leaders of Gangster Disciples, including efforts to set up a committee to manage the gang in the prison system. Brown also testified that Turner had convinced a woman in Colorado to help him circumvent federal prison rules to communicate with gang members in other prisons.

Turner argues that defendants' evidence was highly prejudicial. I agree—the evidence was prejudicial. Evidence of gang affiliation always has the potential to be prejudicial and inflammatory, because a jury is likely to associate gang membership with a propensity for violence, dishonesty, or other deviant behavior. *See United States v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009) ("We have recognized there is substantial risk of unfair prejudice attached to gang affiliation evidence."); *United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir. 1990) ("We do not pretend that the fact that Lewis belonged to the Travelling Vice Lords street gang was not damaging to him in the eyes of the jury. Most street gangs suffer from poor public relations."). In this case, the jury was clearly influenced by defendants' evidence regarding Turner's alleged gang affiliation. Shortly before delivering its verdict, the jury submitted a note to the court stating, "Given the background and associations of the plaintiff in this case, is there anything that can be done to ensure the confidentiality and future safety of the jurors in this case?" Dkt. 120-1. In light of this note, there is no question that the evidence and argument regarding Turner's alleged gang affiliation and activities was prejudicial to Turner.

But even though the evidence was prejudicial, that does not mean that the evidence should have been precluded. Evidence of gang affiliation is admissible if it is more probative than prejudicial. *United States v. Ozuna*, 674 F.3d 677, 681 (7th Cir. 2012); *United States v.*

*Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011). Defendants argue that the evidence of Turner's and his witnesses' gang affiliation was relevant for three reasons.

First, defendants say that the evidence was relevant to show that Turner's witnesses were biased and motivated to lie for Turner, because they were fellow gang members. Proof of bias is almost always relevant. *United States v. Abel*, 469 U.S. 45, 51–52 (1984) ("[A] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony."). And common membership in an organization is probative of bias. *Id. See also Clark v. O'Leary*, 852 F.2d 999 (7th Cir. 1988) (holding that district court erred by limiting cross-examination regarding witness's gang-related bias). Defendants' evidence that Wheeler, Mathews, Stewart, and Thomas were in Gangster Disciples and that Turner outranked them was relevant to the witnesses' bias and motive for testifying in the way that they did.

Second, defendants argue that evidence of gang membership and activities was relevant to respond to Turner's and his witnesses' testimony about defendant Brown's alleged intimidation and threats toward prisoners associated with Turner. I agree. Turner's inmate witnesses testified that Brown warned them not to associate with Turner, and the inmates testified that they interpreted Brown's warnings as attempts to dissuade them from engaging in litigation and advocacy with Turner. But Brown testified that he told the inmates not to engage in gang-related activities with Turner, and that he warned them that participating in gang activity, such as working with Turner to form a governing committee for Gangster Disciples, could cause them to be placed back into segregation. Brown's testimony on this issue was relevant to Turner's argument at trial that Brown retaliated against him and other prisoners for engaging in protected activities.

5

Third, defendants argue that defendant Brown's testimony about Turner's alleged gang activity was relevant to Brown's motivation for demoting Turner from the High Risk Offender Program (HROP), which was the program by which Turner could have moved from segregation to general population. Brown's testimony on this issue was somewhat confusing and contradictory. On the one hand, Brown testified at trial that active gang members can cause violence and disruption in general population, that active gang members and gang leaders should remain in administrative confinement, and that whether a prisoner is engaging in gang activity is a "very important" factor in deciding whether to remove a prisoner from administrative confinement. Brown also testified that Turner was in administrative segregation for gang related activity, and that Turner's gang-related activity was contrary to the goals of HROP.

On the other hand, when I asked Brown directly whether Turner's gang activity was one of the reasons that Brown demoted Turner in HROP, Brown said no. Brown said that he demoted Turner because of Turner's poor behavior on the unit. Brown later clarified his response somewhat, stating that he did not document gang activity as a basis for demoting Turner because the investigation into Turner's gang activities was ongoing and confidential, and because Turner had not yet been accused or found guilty of anything gang-related. Brown also said that when he decided to remove Turner from programming that Turner needed to progress through HROP, Brown was thinking about Turner's behavior and what he knew "in the back of [his] head" about Turner's activities. Therefore, although Brown's testimony about whether Turner's alleged gang activities influenced Brown's decisions relating to Turner's progression in HROP was somewhat contradictory and vague, the testimony was still relevant to Brown's motivations for impeding Turner's progress out of segregation.

Having decided that the evidence of Turner's and his witnesses' alleged gang activities was relevant to the issues being decided at trial, the question remains whether the probative value of the evidence outweighed the prejudice to Turner. I conclude that it did.

As Turner notes in his brief, I expressed concerns during and after trial about defendants' focus on Turner's alleged gang activities. I told defendants that they were focusing too much on defendant Brown's perception that Turner had engaged in gang activities, but that defendants had presented no concrete evidence that Turner was conducting dangerous gang activities from prison. And although Brown testified that Turner communicated with high-ranking gang members and was attempting to set up an organizational structure, defendants presented no evidence of any such communications. For these reasons, during Brown's testimony, I gave the following cautionary instruction to the jury:

> The issue here really isn't for you to decide whether Mr. Turner is a member of the Gangster Disciples. The issue here is whether Mr. Brown retaliated against Mr. Turner for his participation in First Amendment protected activities like filing a lawsuit or writing a book about prison conditions. In deciding that you have to figure out what Mr. Brown had in mind when he did the things that he did. If he did it because he wanted to get back at him for writing the book, that's retaliation, and if he did it because he thought he was a member of the Gangster Disciples, that's a different reason, and so like I said, your decision is not whether Mr. Turner is a member of the Gangster Disciples. Your decision is about whether he got retaliated against for writing his book and participating in the lawsuits.

I gave a similar instruction to the jury as part of the closing instructions after the trial. After instructing the jury regarding the elements of Turner's First Amendment claim, I instructed the jury that:

> In determining whether any defendant violated Turner's First Amendment rights, the question you must answer is not whether Turner was a gang member or whether he engaged in gang-related activities. The question is whether Turner has proven that

7

>         defendants took actions against him because of his protected speech.

Dkt. 116, at 9. These instructions helped mitigate the prejudice from defendants' evidence.

Turner's own testimony, arguments, and cross-examination of Brown also helped mitigate the prejudice caused by Brown's testimony. Turner denied repeatedly that he was involved in a gang or gang activity. He pointed out that it would be nearly impossible for him to engage in gang activity, because he has been in a segregation unit for 24 hours a day for several years, and all of his mail is monitored. Turner explained the purpose of his letters discussing an organizational structure and steering committee. He put into evidence an affidavit from a prisoner-rights advocate who stated that Turner had assisted her in creating a committee to address issues relating to solitary confinement, incarcerating elderly prisoners, conditions of confinement, community outreach, and prison mail. Turner also pointed out that defendants presented no evidence that Turner ever had ordered anyone to be attacked, or that Turner had engaged in trafficking drugs, guns, or other contraband into or out of the prison. Turner questioned Brown about why—if Turner's gang activities motivated Brown to keep Turner in segregation—Brown never told Turner to stop participating in gang activity and never cited gang activity as a basis for demoting Turner in HROP. Finally, Turner argued that many gang members are housed in general population, so defendants' suggestion that Turner was kept in segregation due to gang activities or affiliation was disingenuous.

Because Turner was able to respond directly to defendants' evidence and arguments about his gang activity, and because the jury was instructed to focus on the elements of the claims at issue and not on Turner's alleged gang affiliation, I conclude that the probative value of the evidence regarding Turner's alleged gang activities outweighed the prejudice to Turner. Ultimately, Turner made several good arguments about defendants' motivations, but the jury

chose not to accept Turner's version of the facts. Turner has not shown that the evidence of Turner's alleged gang activities made the trial unfair.

**B. Evidence and argument about Turner's and his witnesses' prior offenses**

Turner's second argument is that the court erred in permitting defendants to introduce evidence of his and his witnesses' convictions and sentences. But defendants did not introduce such evidence. Defendants' counsel asked Turner and his witnesses whether they had been convicted of felonies, but they did not ask or introduce evidence about the nature of the offenses or the length of any witnesses' sentence. Turner argues that the security threat group affiliation forms introduced by defendants listed convictions and sentences, but Turner is mistaken. The forms did not list crimes or sentences. Dkt. 119, Exhibit 510. Accordingly, this argument does not provide a basis for a new trial.

**C. Evidence that another inmate's name was on the inhaler confiscated from Turner's cell**

Turner's third argument is that the court erred by permitting defendants to introduce evidence that another inmate's name was on the inhaler confiscated from Turner's cell. From the beginning of this case, defendants have insisted that another inmate's name was on the inhaler. But defendants did not reveal the name of the other inmate until trial, when defendant Heidi Bloyer testified that the inhaler had the name "Anthony Turner" on it. Turner contends that it was unfair for defendants to withhold the other inmate's name until trial.

Turner's argument is not persuasive. As I explained in Turner's motion in limine on this issue, defendants have stated throughout this lawsuit that the inhaler belonged to another inmate with a name similar to Turner's name. Dkt. 103, at 2. It should not have surprised Turner that defendants would state at trial that another inmate's name was on the inhaler. And

contrary to Turner's arguments, defendants did not violate any discovery obligations or court orders by revealing the specific name at trial. During discovery, Turner never asked the defendants who were involved in confiscating the inhaler—Bloyer and Bulmann—what name was on the inhaler. And Turner never filed a motion to compel Bloyer or Bulmann to provide the name. Turner asked defendant Brown during discovery whether Bulmann told him what name was on the inhaler, but Brown responded that he did not speak to Bulmann. Dkt. 86, at 27. Before Bloyer testified about the name she saw on the inhaler, defense counsel asked and received permission from the court to reveal the name. The testimony was not unfair to Turner and does not warrant a new trial.

**D. Weight of the evidence**

Finally, Turner contends that the verdict was against the weight of the evidence. "A motion for a new trial can be granted when the district court—in its own assessment of the evidence presented—believes that the verdict went against [its] manifest weight." *Mejia v. Cook County*, 650 F.3d 631, 634 (7th Cir. 2011).

Turner argues that he proved that defendant Brown knew about Turner's protected First Amendment activities, that Brown threatened Turner's witnesses against participating in Turner's litigation, and that Brown threatened Turner with the confiscation of his asthma inhaler if Turner did not stop filing legal actions and grievances. Turner also contends that he introduced evidence that the confiscated inhaler belonged to him, and not another inmate. He argues that in light of this evidence, the verdict is against the weight of the evidence.

But Turner is mistaken. Although he presented evidence that supported his claims, defendants presented contrary evidence that supported the verdict. All defendants denied being motivated to punish Turner because of his litigation or advocacy. In fact, most of the

defendants testified credibly that they were unaware of Turner's litigation activities. As for Brown, who was undeniably aware of Turner's litigation and advocacy, he explained that the decision to demote Turner in HROP was because of Turner's behavior problems on the unit, not because of Turner's litigation history. Brown also suggested, at least indirectly, that Turner's gang activity played a role in his belief that Turner should not be permitted to enter general population. Brown also testified that he did not know Turner had an inhaler and did not order any officer to confiscate Turner's inhaler. Finally, defendants presented evidence to impeach Turner's witnesses, showing that each had a motive to lie for Turner. In sum, there was ample evidence to support the verdict. Turner has not shown that he is entitled to a new trial.

ORDER

IT IS ORDERED that plaintiff Glenn T. Turner's motion for a new trial, Dkt. 127, is DENIED.

Entered April 7, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge